1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   SIERRA DAWN LORD,                          NO.  C13-1775-MJP-JPD

9                          Plaintiff,

10        v.                                    REPORT AND
                                                RECOMMENDATION
11   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
12
                           Defendant.
13

14        Plaintiff Sierra Dawn Lord appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied her application for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be REVERSED and

19   REMANDED.

20                       I.        FACTS AND PROCEDURAL HISTORY

21        Plaintiff is a 37 year old woman with one year of college education.  Administrative

22   Record ("AR") at 181-83.  Her past work experience includes employment as a housekeeper.

23   AR at 30, 66.  Plaintiff was last gainfully employed on June 2, 2010.  AR at 23.

24

REPORT AND RECOMMENDATION - 1

1    On June 2, 2010, plaintiff filed a claim for SSI payments alleging an onset date of July

2    1, 2007.  AR at 21.  Plaintiff asserts that she is disabled due to a brain cyst, headaches,

3    scoliosis, a back injury, major depressive disorder, cognitive disorder, impulse control

4    disorder, oppositional defiant disorder, asthma, and rhombencephalosynapsis.  AR at 23, 182.

5    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 75-

6    88.  Plaintiff requested a hearing which took place on May 8, 2012.  AR at 37-74.  On June 29,

7    2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his

8    finding that plaintiff could perform a specific job existing in significant numbers in the national

9    economy.  AR at 18-36.  Plaintiff's administrative appeal of the ALJ's decision was denied by

10   the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the

11   Commissioner as that term is defined by 42 U.S.C. § 405(g).  On October 1, 2013, plaintiff

12   timely filed the present action challenging the Commissioner's decision.  Dkts. 1-3.

## II.    JURISDICTION

13   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

14   405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

15   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

16   social security benefits when the ALJ's findings are based on legal error or not supported by

17   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

18   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

19   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

20   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

21   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

22   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Lord bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

1    to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

2    the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

3    true, then the burden shifts to the Commissioner at step five to show that the claimant can

4    perform other work that exists in significant numbers in the national economy, taking into

5    consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

6    404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

7    claimant is unable to perform other work, then the claimant is found disabled and benefits may

8    be awarded.

9                                    V.     DECISION BELOW

10       On June 29, 2012, the ALJ issued a decision finding the following:

11       1.   The claimant has not engaged in substantial gainful activity since June
             2, 2010, the application date.

12
13       2.   The claimant has the following severe impairments: asthma, history of
             MRSA, rhombencephalosynapsis, headaches, and dysthymia vs. major
             depressive disorder.

14
15       3.   The claimant does not have an impairment or combination of
             impairments that meets or medically equals the severity of one of the
             listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

16
17       4.   After careful consideration of the entire record, I find that the claimant
             has the residual functional capacity to perform a full range of work at
18           all exertional levels but with the following nonexertional limitations:
             the claimant must avoid concentrated exposure to vibration and
             hazards; avoid concentrated exposure to dust, fumes, gasses, and
19           odors, but is able to tolerate dust and odors that ordinarily exist in
             most buildings or office settings.  The claimant could perform simple,
20           routine tasks and follow short, simple instructions.  The claimant could
             do work that needs little or no judgment and could perform simple
21           duties that can be learned on the job in a short period.  The claimant
             would have average ability to perform sustained work activities (i.e.
22           can maintain attention and concentration, persistence, and pace) in an
             ordinary work setting on a regular and continuing basis (i.e., 8 hours a
23           day, for 5 days a week, or an equivalent work schedule) within
             customary tolerances of employers rules regarding sick leave and
24           absences.  The claimant could deal with occasional work setting

REPORT AND RECOMMENDATION - 5

changes.  The claimant could have occasional interactions with co-workers and supervisors and can work in proximity to co-workers but not in a cooperative or team effort.  The claimant would not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process.  Incidental contact with the general public is not precluded.

5.  The claimant is capable of performing past relevant work as a housekeeper (DOT 323.687-014, SVP2).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6.  The claimant has not been under a disability, as defined in the Social Security Act, since June 2, 2010, the date the application was filed.

AR at 23-31.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.  Whether the ALJ erred by concluding plaintiff's headaches did not meet or medically equal the requirements of a Listed Impairment at step three?

2.  Whether the ALJ erred by not accounting for any limitations due to plaintiff's headaches in the RFC determination at step four?

*See* Dkt. 18 at 1; Dkt. 19 at 1.

## VII.   DISCUSSION

### A.   The ALJ Did Not Err at Step Three

Plaintiff argues that the "ALJ failed to consider whether the plaintiff's headache impairment, which he found severe at step 2, is medically equivalent to a listed impairment, such as listing 11.03" and that because "[p]laintiff testified that her headaches occur '[a]t least a few times a week, every other day or so,'" this would meet the "*prima facie* requirement for listing 11.03 requiring episodes occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment, '. . . with alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.'"  Dkt. 18 at 14 (emphasis in original).

REPORT AND RECOMMENDATION - 6

1    The Commissioner argues that plaintiff's arguments amount to nothing more than

2    generalized assertions and that plaintiff offers no plausible theory as to how her impairments

3    equal the requirements of Listing 11.03.  Dkt. 19 at 2-4.  The Court agrees with the

4    Commissioner.

5              *1.      Standard for Step Three Analysis*

6              At step three, the ALJ determines if a claimant's impairment meets or equals an

7    impairment listed in Appendix 1 to Subpart P of Regulations No. 4.  The Listing of

8    Impairments describes specific impairments of each of the major body systems "which are

9    considered severe enough to prevent a person from doing any gainful activity."  *See Tackett*,

10   180 F.3d at 1099 (citing 20 C.F.R. § 404.1525).  If a claimant meets or equals a listed

11   impairment he or she will be found disabled at this step without further inquiry.  *Id*. (citing 20

12   C.F.R. § 404.1520(d)).

13             The list describes the characteristics of each impairment.  The description includes the

14   symptoms, signs, and laboratory findings that make up the characteristics of each listed

15   impairment.  *See* 20 C.F.R. § 404.1525.  To meet a listed impairment, a claimant must

16   establish that he or she meets each characteristic of a listed impairment relevant to his or her

17   claim.  To equal a listed impairment, a claimant must establish symptoms, signs and laboratory

18   findings "at least equal in severity and duration" to the characteristics of a relevant listed

19   impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most

20   like" the claimant's impairment.  *Tackett*, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1526)).

21             If a claimant suffers from multiple impairments and none of them individually meets or

22   equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the

23   claimant's impairments will be evaluated to determine whether they meet or equal the

24   characteristics of any relevant listed impairment.  *Id.*

REPORT AND RECOMMENDATION - 7

1

2.      *Discussion*

2          Listings under 11.00 generally relate to neurological disorders.  Listing 11.03 relates to

3    "Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal)."  Listing 11.03 requires:

4          nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by
           detailed description of a typical *seizure pattern including* all associated
5          phenomena; occurring more frequently than once weekly in spite of at least 3
           months of prescribed treatment. *With alteration of awareness or loss of*
6          *consciousness and transient postictal manifestations of unconventional*
           *behavior or significant interference with activity during the day.*

7    *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, 11.03 (emphases added).  Section 11.00 indicates

8    that:

9          Under 11.02 and 11.03, the criteria can be applied only if the impairment
           persists despite the fact that the individual is following prescribed antiepileptic
10         treatment.  Adherence to prescribed antiepileptic therapy can ordinarily be
           determined from objective clinical findings in the report of the physician
11         currently providing treatment for epilepsy.  Determination of blood levels of
           phenytoin sodium or other antiepileptic drugs may serve to indicate whether the
12         prescribed medication is being taken.  When seizures are occurring at the
           frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment
13         must include consideration of the serum drug levels.

14   20 C.F.R. Pt. 404, Subpt. P., App. 1, 11.00.

15         Here, nothing indicates that plaintiff meets the criteria under Listing 11.03 as plaintiff

16   only claims she experiences headaches "at least a few times a week, every other day or so."

17   Dkt. 18 at 14; AR at 59.  Listing 11.03 requires that a claimant be currently undergoing

18   treatment for *epilepsy*.  There is nothing in the record indicating that plaintiff is undergoing

19   such treatment.  Listing 11.03 also requires that a claimant suffer from an "alteration of

20   awareness or loss of consciousness and transient postictal manifestations of unconventional

21   behavior or significant interference with activity during the day."  Again, nothing in the record

22   indicates that plaintiff has manifested any such symptoms as a result of her impairments.  As a

23

24

REPORT AND RECOMMENDATION - 8

result, plaintiff cannot demonstrate that her headaches medically equaled the requirements under Listing 11.03.

B.     The ALJ Erred at Step Four

Plaintiff argues that the ALJ erred by determining her headaches to be a severe medical impairment at step two, but failing to account for any limitations for her headaches in the RFC determination at step four.  Dkt. 18 at 3-4.  Specifically, plaintiff argues that the record supports limitations including "an individual being off tasks a certain percentage of the work day, an individual who would have a certain amount of unexcused absence from work in a month, or an individual who could not remain in bright or noisy environments due to light and sound sensitivity."  *Id*. at 5.

The Commissioner argues that the ALJ did not err in not accounting for any limitations for plaintiff's headaches in the RFC determination because: (1) an ALJ is not mandated to account for every severe impairment in the RFC determination (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009)), and (2) the ALJ provided clear and convincing reasons to dismiss any limitations about headaches.  Dkt. 19 at 4-10.

*1.     Standard for Step Four Analysis*

At step four, the claimant bears the burden of proving that she can no longer perform her past relevant work.  20 C.F.R. §§ 404.1512(a), 404.1520(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).  Although the burden of proof lies with the claimant at step four, the ALJ retains a duty to make factual findings to support his conclusion.  *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (citing SSR 82-61).  The claimant must be able to perform:

1.     The actual functional demands and job duties of a particular past relevant job; or

2.     The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

REPORT AND RECOMMENDATION - 9

1   SSR 82-61.  "This requires specific findings as to the claimant's residual functional capacity,

2   the physical and mental demands of the past relevant work, and the relation of the residual

3   functional capacity to the past work."  *Id*. at 845 (citing SSR 82-62).  A claimant may be found

4   not disabled at step four based on a determination that she can perform past relevant work as it

5   was actually performed or as it is generally performed in the national economy.  SSR 82-61;

6   SSR 96-8p.

7              *2.   Discussion*

8         The ALJ erred.  While the Commissioner is correct that the ALJ is not mandated to

9   account for every severe impairment in the RFC determination, the ALJ is mandated to provide

10  clear and convincing reasons supported by substantial evidence, for not accounting for any

11  severe impairment.  *See Bray*, 554 F.3d at 1228-29; *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th

12  Cir. 2004) (citing *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)).  Here, the ALJ

13  erred by failing to provide clear and convincing reasons as to why there should not be any

14  limitations based on plaintiff's headaches in the RFC determination.  With respect to plaintiff's

15  headaches, the ALJ only stated:

16        With regard to the claimant's headaches and rhombencephalosynapsis, there is
          limited evidence to indicate any specific functional limitations attributable to
17        these impairments.  At a January 5, 2010, office visit with Mark D. Hoffman,
          MD, it is noted that the claimant's MRI was reviewed by Dr. Landau, a
18        neurosurgeon, who stated that the claimant's rhombencephalosynapsis "should
          not cause symptoms," and her pineal cyst "is also nothing to be concerned about
19        and no need for routine follow-up MRI" (Ex. 3F, pg. 4).  The record does not
          contain contrary findings from other qualified specialists and the claimant
20        received no additional treatment for either issue.

21  AR at 27.  This statement in and of itself is not a clear and convincing reason to not account for

22  any limitations based on plaintiff's headaches, especially in light of the fact that the ALJ found

23  these headaches to be severe impairments, and most of the plaintiff's treating and/or examining

24  physicians found plaintiff's claims about her headaches to be credible and found her headaches

REPORT AND RECOMMENDATION - 10

1    to be limiting to some extent.  *See e.g.*, AR at 246 (Dr. Kerry Bartlett indicating in her

2    conclusion plaintiff's "headaches are daily and rather unpredictable in terms of degree of

3    severity, and this would likely preclude stable placement in competitive employment at this

4    time and no employer could be expected to tolerate the level of unpredictable absenteeism that

5    she would expect to have."), 253 (Plaintiff's longtime treating physician Dr. Mark Hoffmann,

6    assessing that plaintiff's "[h]eadaches bother her about 2 days per week and are mild to

7    moderate in severity and relieved . . . ."), 254-56 (Dr. Hoffmann indicating that plaintiff "has a

8    history of intermittent posterior occipital headaches and neck pain" and that she "did have

9    abnormal CT scan and MRI" and that "it [was] unclear at [the] time whether her abnormal

10   MRI findings would make her disabled or unable to sit for job training classes or look for

11   work."), 286 (Dr. Anselm Parlatore indicating that plaintiff should "be followed closely by a

12   neurologist and have another MRI to document her cerebral cyst in terms of quantifying it and

13   attempting to judge whether it is the cause of the etiology of any of her symptoms most notably

14   her headaches.").

15         Furthermore, the Court does not find the Commissioner's argument that "[b]ecause the

16   ALJ properly discounted the credibility of [plaintiff's] subjective complaints, he was free not

17   to incorporate her statements about her headaches into [RFC] finding" to be persuasive.  *See*

18   Dkt. 19 at 4.  First, while it is true that the ALJ discredited plaintiff's credibility based on

19   various arguments including: (1) plaintiff's failure to pursue treatment; (2) a finding that

20   plaintiff stopped working for reasons other than her impairments; (3) plaintiff's headaches and

21   condition improving with treatment; and (4) plaintiff's testimony being inconsistent with her

22   daily activities (*see* Dkt. 19 at 5-10), most of these reasons are unrelated to, or do not address,

23   plaintiff's headaches specifically.  Second, even the evidence indicating that plaintiff's

24   headaches or conditions improved does not justify the ALJ's failure to assess any RFC

1    limitations based on plaintiff's headaches, because even that evidence shows that the plaintiff's

2    headaches were reduced to "only ~40% of the time instead of 100%." AR at 400. Thus the

3    evidence does not support a finding that plaintiff's headaches were completely gone such that

4    plaintiff was no longer limited by them at all. Indeed, if that were the case, they would not

5    constitute "severe impairments" as found at step two.

6         Finally, given the discussion above, the Court finds that the ALJ erred by not posing

7    any hypothetical to the vocational expert that took into account plaintiff's headaches or any

8    limitations stemming from these headaches. *See* AR at 65-73. Hypothetical questions posed to

9    a vocational expert must "set out all the limitations and restrictions of the particular claimant . .

10   . ." *Bray*, 554 F.3d at 1228 (quoting *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991)).

11   If an ALJ's hypothetical does not reflect all of the claimant's limitations, then "the expert's

12   testimony has no evidentiary value to support a finding that the claimant can perform jobs in

13   the national economy." *Id.* (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

14        The Court believes the proper remedy for the ALJ's errors is to remand this case back

15   to the ALJ for the limited purpose of reexamining plaintiff's RFC, and taking into account

16   whether any limitations due to plaintiff's headaches are necessary. This may, but not

17   necessarily will, also require further medical evidence regarding environment or workplace

18   limitations to reduce the impact of headaches (e.g., light and noise limitations). If the ALJ

19   determines that no additional limitations are necessary, he should specifically state the reasons

20   why in his opinion. If additional limitations are found, the ALJ should question the vocational

21   expert regarding plaintiff's abilities to do any work given these limitations.

22

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 4, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 5, 2014**.

DATED this 21st day of August, 2014.

_James P. Donohue_
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13